SUBURBAN HOMES CO., RESPONDENT, *v.* NORTH ET AL., APPELLANTS.

(No. 3,440.)

(Submitted November 14, 1914.   Decided December 16, 1914.)

[145 Pac. 2.]

*Vendor and Purchaser—Contract of Sale—Cancellation—Rescission—Part Payments—Improvements—Recovery Back—Forfeitures—Waiver—Tender of Deed—Complaint.*

Vendor and Purchaser—Contract of Sale—Cancellation—Restoration of Part Payment—Complaint.
  1.  A vendor seeking the aid of a court of equity to have a contract of sale of land canceled as a cloud upon his title, it having been breached by the purchaser by his failure to make payment of installments as they fell due, need not, as he would be compelled to do in an action to rescind, allege in his complaint that he has restored, or offered to restore, partial payments theretofore made.
    [As to return of consideration on repudiation of void contract, see note in Ann. Cas. 1914C, 898.]
Same—Recovery of Part Payments, When.
  2.  As a general rule, the law forfeits to the vendor—the innocent party—all payments made in part performance by the purchaser—the defaulting party—when the latter stops short of full performance by failure to make full payment; where, however, the latter can allege and prove that his default was not the result of his grossly negligent, willful or fraudulent breach of duty, he may recover payments made prior to the breach, provided he make full compensation to the vendor.

Same—Improvements on Land—Recovery, When.
3. To entitle a defaulting purchaser to reimbursement for improvements made on the land, a contract of sale of which plaintiff seeks to have rescinded, he must make a showing of some equitable basis for it, as, for instance, that the improvements were within the contemplation of the parties when the contract was made, etc.

Same—Improvements—Measure of Recovery.
4. In the absence of some provision in a contract of sale of land fixing a different measure of compensation for improvements placed thereon by the purchaser, the amount recoverable for them is not what it cost to put them on the land, but the enhanced value of the property, not exceeding the amount expended for the improvements, deducting an amount equal to the fair rental value of the premises.

Same—Time Essence of Contract—Forfeitures—Waiver.
5. A stipulation in a contract of sale of real estate making time of the essence, and reserving an option to the vendor to terminate the contract for failure of the purchaser to pay any required installments of the purchase price, may be waived by the vendor.

Same—Forfeitures—Duty of Vendor.
6. Default in the payment of any installment of the purchase price called for in a contract of sale of real estate is a distinct breach, and gives the vendor a right to declare a forfeiture as stipulated in the contract; but the right must be promptly exercised, or the vendor will be presumed to treat the contract as still valid and existent.

Same—Default in Payment—Rights of Vendor.
7. A vendor who grants time to the purchaser to pay installments of the purchase price, though the contract makes time of the essence and stipulates for a forfeiture for nonpayment of any installment at maturity, may, on the default continuing, demand payment of the balance due and give notice of his purpose to terminate the contract in the event of further default; and where the purchaser after such notice does not pay within a reasonable time, the vendor may terminate the contract.

Same—Cancellation—Tender of Deed—Failure to Allege—When Immaterial.
8. Where plaintiff, in an action to cancel a contract of sale of land, tendered a deed at the trial, and defendant failed to make payment of the balance due on the purchase price, the latter was in no position to claim error because of plaintiff's omission to allege in his complaint that demand upon defendant for payment was accompanied by a deed.

*Appeal from District Court, Yellowstone County; Geo. W. Pierson, Judge.*

Action by the Suburban Homes Company against Austin North and wife. From a judgment for plaintiff, defendants appeal. Affirmed.

Cause submitted on briefs of counsel.

*Messrs. Goddard & Clark,* for Appellants.

The complaint failed to allege a tender or offer to pay the defendants the moneys which they had paid on the contract and

return to the defendants the interest paid by them, about $5,870, which was paid on deferred payments. This action being one to forfeit or rescind the contract, it comes within the provisions of subdivision 2 of section 5065 of the Revised Codes. (*Cotter* v. *Butte & Ruby Valley S. Co.,* 31 Mont. 129, 77 Pac. 509.) The rescission of a contract, in order to be effectual, must be a rescission *in toto.* The principle contended for has been sustained in numerous cases, among which are *White* v. *Buell,* 90 Cal. 177, 27 Pac. 19, which affirms *Cleary* v. *Folger,* 84 Cal. 316, 18 Am. St. Rep. 187, 24 Pac. 280. (See, also, *Phelps* v. *Brown,* 95 Cal. 572, 30 Pac. 774.)

It is the general principle, well recognized, that no contract can be rescinded by one of the parties unless both can be restored to the condition in which they were before the contract was made. The party rescinding must put the other *in statu quo.* (2 Parsons on Contracts, 6th ed., 678.)

In this case the court, in its first conclusion of law, found that by reason of plaintiff having received payment on the contract, extending over more than five years after default of payments, the plaintiff waived its right to take advantage of the clause in the contract making time the essence of the contract, and we find no fault with this finding. In the case of *Miller* v. *Steen,* 30 Cal. 403, 89 Am. Dec. 124, it is held that where time is not of the essence of the contract, and default is made in one or more of the payments, the vendor is not entitled to have the money and property already paid by the vendee. It is also held in that case that if the vendor rescinds, he must put the vendee *in statu quo* by returning the portion of the purchase money paid.

When the vendee has paid part of the purchase money and given his notes for the balance, before the vendor can rescind a contract he must return or offer to return money paid, with legal interest less reasonable rental of the premises, if the vendee has been in possession, and also all unpaid notes. (*Frink* v. *Thomas,* 20 Or. 265, 12 L. R. A. 239, 25 Pac. 717.) In this case there is not evidence of any rental value of the premises. Re-

spondent seeks to enforce a forfeiture, and under the ruling of equity applicable to such cases, a forfeiture will not be enforced, and in a proper case equity will interpose to prevent the enforcement of the forfeiture at law.  (*Keller* v. *Lewis,* 53 Cal. 113.)

The failure of the vendee, under a contract for the sale of land, to pay the purchase price within the time stipulated or to perform other conditions of the contract is no ground for a decree in equity and declaring a forfeiture of his rights.  The court of equity will never enforce a penalty or forfeiture. (*McCormick, Admr.,* v. *Rossi,* 70 Cal. 474, 15 Pac. 35.)

*Messrs. Johnston & Coleman,* for Respondents.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

On March 17, 1905, the plaintiff and the defendant Austin North entered into a contract under the terms of which the plaintiff agreed to sell to this defendant a number of blocks and lots situated in the city of Billings and Foster's addition thereto, in Yellowstone county.  The consideration for the contract was the sum of $25,000, to be paid by North in installments as follows: $1,000 in cash upon the execution of the contract, $5,000 on March 17, 1907, a like sum on March 17, 1908, and the balance of $10,000 on March 17, 1909, with interest on any installment not paid when it should become due at the rate of 8 per cent per annum, payable on March 17 of each year.  The defendant was to pay all taxes and assessments, ordinary and extraordinary that might be subsequently levied and assessed against the property or any part of it.  Upon default by defendant in the payment of any installment of the purchase price or interest thereon, or of any taxes or assessments upon the property, plaintiff might, at its option, declare the contract null and void and no longer binding upon it.  In such case the property, together with all payments, should thereupon be and remain the property of the plaintiff, its successors and assigns, the defendant thereafter to have no right or interest therein or right of action to recover it or any installment of the purchase money

theretofore paid. Time was expressly made of the essence of the contract. It was further agreed that in case the defendant defaulted in the performance of any of the stipulations of the contract, and the plaintiff elected to exercise its option to declare it null and void because of such default, such declaration should be made by written notice directed to the defendant and deposited in the postoffice at Billings. Upon the performance by the defendant of all the stipulations of the contract on his part, he became entitled to a conveyance with the usual covenants of warranty. Except the cash payment and the installment due on March 17, 1906, the defendant failed to pay any of the installments as they fell due, or at all. He did make payments of interest in amounts not exceeding $600 at any one time, down to April 23, 1912, when the last payment was made. On June 5, 1912, the plaintiff made written demand for payment of the balance then due, amounting to $25,983.33. In this demand the defendant was informed that, if he did not make payment on or before July 10, 1912, the plaintiff would treat the contract as null and void and would bring an action to have it canceled. Defendant was further informed that the plaintiff would also ask for the cancellation of a deed executed to defendant by Yellowstone county to the streets and alleys contiguous and adjacent to the property covered by the contract. The defendant having failed to comply with this demand, the plaintiff on July 27 notified him by mail, through the postoffice at Billings, that it had elected to terminate the contract because of his failure to comply with its demand, and thereupon brought this action to have the contract and deed canceled. After reciting the foregoing facts, the complaint alleges that the taxes and assessments levied upon the property for the years 1910 and 1911 are due and unpaid; that if the contract between the plaintiff and defendant North be left outstanding, it may cause serious injury to plaintiff, in that it would appear as a cloud upon his title; and that the defendant Hattie North is the wife of defendant Austin North. The relief demanded is that the defendants be decreed to have no right or interest in

the property, and that plaintiff's title thereto be decreed good and valid, that said defendants be enjoined from claiming any interest therein, that the contract between plaintiff and defendant Austin North be ordered delivered up for cancellation, and that the plaintiff recover its costs.

The answer does not controvert any of the material allegations in the complaint, except that it is denied that the plaintiff made written demand upon North for payment of the balance of the purchase price, or that it thereafter gave notice of its election to forfeit the contract. It does not allege facts upon which defendant seeks affirmative relief. It states as separate defenses the following: (1) That after the execution of the contract the defendant North paid to the plaintiff $10,870, but that plaintiff did not at any time prior to the bringing of the action offer to repay to the defendant this amount or any part of it; (2) that after defendant went into possession he expended large sums of money in installing a water supply, in grading the streets and alleys, and otherwise improving the property, but that plaintiff did not, before commencing the action, pay to the defendant the money so expended, or any portion thereof; (3) that after default by defendant in making payment, the plaintiff accepted various payments from him, applying the same upon the contract without objection; that by this conduct it had led the defendant to believe that it intended to extend the time of payment fixed in the contract, and that it thereby waived its right and estopped itself to declare forfeiture of the contract under the stipulation therein; and (4) that plaintiff at no time before commencing the action offered to restore to the defendant the benefits it had received under the contract.

The findings of fact and conclusions of law by the trial court were in favor of plaintiff, and a decree was entered awarding it the relief demanded. The defendants North have appealed from the decree and an order denying their motion for a new trial. A recital of the facts relating to the deed from Yellowstone county has been omitted from the foregoing statement, for the reason that no appearance was made at the trial by the

defendant commissioners, and the propriety of the relief granted in this behalf is not brought in question in this court.

1. The first contention made is that the court erred in over-ruling defendants' objection to the introduction of evidence. It [1] is said that, since the apparent purpose of the action is to enforce a rescission of the contract, it was incumbent upon plaintiff to allege that it had restored, or offered to restore, to the defendant Austin North everything of value received from him in part performance of the contract, *viz.,* payments made by him. This contention is based upon a misconception of the scope and purpose of the action. Rescission requires the party seeking to rescind to restore, or offer to restore, to the other party everything of value received by the former under the contract, upon condition that the latter will do likewise. (Rev. Codes, sec. 5063; *Clark* v. *American Dev. & Min. Co.,* 28 Mont. 468, 72 Pac. 978; *Cotter* v. *Butte & Ruby Valley S. Co.,* 31 Mont. 129, 77 Pac. 509.) If he seeks the aid of a court of equity, he must aver that he has done this, or set forth excusatory facts. Such is not the purpose of this action. Plaintiff seeks to have the contract canceled as a menace to his title, having asserted his right under the express stipulation therein to declare it no longer binding upon him because of a breach of it by the defendant. While both actions are of equitable cognizance, they are wholly different in their scope and purpose, and the rules applicable to the one have no application to the other. (*Cook-Reynolds Co.* v. *Chipman,* 47 Mont. 289, 133 Pac. 694; *Fratt* v. *Daniels-Jones Co.,* 47 Mont. 487, 133 Pac. 700.) In this sort of action the complaint need not contain any allegation on the subject of restoration.

2. The same may be said of the contention that the purpose [2] of the action is to enforce a forfeiture, and therefore cannot be sustained. Plaintiff does not ask that the court declare a forfeiture of the amounts paid by the defendant, nor does the decree adjudge the rights of the parties in this behalf. It merely declares that the plaintiff is entitled to be restored to its rights as they existed prior to the execution of the contract,

and that the instrument—the only evidence of any right in defendant—be delivered up for cancellation, so that it may not hereafter be a source of embarrassment to the plaintiff, as a standing menace to its title. It leaves the question whether the defendant is entitled to recover his payments, or any part of them, wholly unadjudicated. As was pointed out in *Clifton* v. *Willson,* 47 Mont. 305, 132 Pac. 424, one who has been guilty of a breach of his contract, by stopping short of full performance, cannot ordinarily recover payments, or any part thereof, made prior to the breach; nor can he do so under any circumstances, unless, within the rule of the statute, upon full compensation to plaintiff (Rev. Codes, sec. 6039), he can allege and prove that the default was not the result of his "grossly negligent, willful or fraudulent breach of duty." The right to recover in such case is an exception to the general rule that the law forfeits to the innocent party all payments made, or the value of acts done, in part performance by the other party, when he stops short and refuses to proceed to the ultimate conclusion. (*Perkins* v. *Allnut,* 47 Mont. 13, 130 Pac. 1; *Cook-Reynolds Co.* v. *Chipman, supra; Fratt* v. *Daniels-Jones Co., supra.*)

3. It is contended that the decree cannot stand because the complaint contains no allegation on the subject, and the evidence [3] shows conclusively that the defendant spent a large sum in installing improvements upon the property, which the plaintiff did not pay or tender to him before the commencement of the action. Here again the defendant proceeds upon the assumption that the purpose of the action is to have adjudicated a rescission of the contract. Even were this its purpose, the defendant is not entitled to relief in this behalf, in the absence of a showing of some equitable basis for it, as, for instance, that the improvements were within the contemplation of the parties when the contract was made, and that complete performance has not been prevented by his grossly negligent, willful, or fraudulent breach of his obligation. If he has equities, he must assert them (*Moore* v. *Giesecke,* 76 Tex. 543, 13 S. W. 290), and unless he does so he is not entitled to reimbursement. Otherwise, the

vendor, though without fault, could exercise the option reserved in the contract only by paying for the privilege. (*Moore* v. *Giesecke, supra; Banks* v. *McQuatters* (Tex. Civ. App.), 57 S. W. 334; *Coleman* v. *Stalnacke,* 15 S. D. 242, 88 N. W. 107.) In *Moore* v. *Giesecke, supra,* the court said: "When the vendor's suit is predicated upon the mere refusal of the vendee to pay the whole consideration contracted for, the fact that the vendee has paid part of the consideration and made  *  *  *  valuable improvements, coupled with possession of the property, unaided by some other sufficient equity, will not entitle him to recover for such purchase money or improvements. In such cases, when the vendor has neither waived his legal rights nor committed any default, he cannot be involuntarily taxed with improvements made upon his property without his consent, or be made to pay a price for recovering it back."

As already stated, the assumption of counsel for defendant has no basis in fact. The answer does not allege facts to justify, nor does the prayer demand, affirmative relief of any kind. It is defensive merely, and alleges only matter which goes to the sufficiency of the complaint, from the viewpoint of counsel. Therefore a case is not presented warranting relief to the defendant. In order to avoid the consequences of his default, we can see no reason why the defendant should not be required to bring himself within the equity of the statute as interpreted in *Cook-Reynolds Co.* v. *Chipman, Fratt* v. *Daniels-Jones Co.,* and other cases cited above.

Apart from these considerations, there is not in the record any evidence touching the value of the improvements, other than [4] the testimony of witnesses as to what they cost in actual outlay. Nor does the evidence disclose whether they were made exclusively for the benefit of the property covered by the contract, or were designed in part to improve other property in the vicinity belonging to the defendant North. Upon this evidence the court would not have been justified in making a finding as to their value. "In the absence of some provision in the contract fixing a different measure of compensation, the amount

recoverable for improvements is not what it cost to put them on the property, but the enhanced value of the property, not exceeding the amount expended for the improvements, and from them is to be deducted an amount equal to the fair rental value of the premises." (39 Cyc. 1403; see, also, *Conlan* v. *Sullivan,* 110 Cal. 624, 42 Pac. 1081; *Glass* v. *Hampton* (Ky.), 122 S. W. 803; *Guthrie* v. *Holt,* 9 Baxt. (Tenn.) 527; *Herring & Bird* v. *Pollard's Exrs.,* 4 Humph. (Tenn.) 362, 40 Am. Dec. 653; *Bond* v. *Wilson,* 129 N. C. 325, 40 S. E. 179.) So far as the evidence discloses, the amounts expended by the defendant did not add a penny's worth to the value of the property, nor can it be ascertained therefrom what part of the outlay was made for the benefit of it, as distinguished from other property of defendant in the immediate vicinity.

4. Although by its express terms time is made of the essence of a contract, and an option is reserved by the vendor to declare it terminated for failure to pay the purchase price at the date [5] it falls due, or, if it is payable in installments, at the date that any one of the installments falls due, this provision may be waived by a failure to exercise the option, or by accepting a payment after it is due. The vendor cannot thereafter allege such default as a ground for declaring the contract terminated. (Pomeroy on Contracts, sec. 357; 2 Warvelle on Vendors, sec. 820; *Grigg* v. *Landis,* 21 N. J. Eq. 494; *Boone* v. *Templeman,* 158 Cal. 290, 139 Am. St. Rep. 126, 110 Pac. 947.) If payment is to be made in installments, default in the payment of any [6] installment is a distinct breach and gives the vendor the right to declare a forfeiture. The right must be promptly exercised, however; otherwise, the right being exclusively that of the plaintiff, he will be presumed to regard the contract as still valid and existent. On this subject Mr. Warvelle says: "In the absence of other circumstances, nothing can be predicated upon a mere neglect of the vendor to declare a forfeiture at the time such right accrues; and the fact that the vendor has before indulged the vendee by accepting payments after they were due furnishes no excuse for his not meeting the other pay-

ments promptly, nor will it operate to prevent the vendor from declaring a forfeiture. It would seem, however, that where a forfeiture has been practically waived by partial payments by the vendee after the time prescribed, the vendor cannot then suddenly stop short and insist upon a forfeiture for the non-payment of the arrears remaining unpaid, without any previous notice of his intention so to do if the arrears are not paid. Indeed, the fact of indulgence is a strong circumstance tending to show that neither party intended that a failure to perform the contract according to its terms, at the time specified, should forfeit the right of the party failing to have a specific performance; and where the vendor suffers the purchaser to remain in possession of the property, and receives payments from him down to within a short period of declaring a forfeiture, such payments aggregating a large portion of the purchase price, he will, it seems, not be permitted to insist upon a forfeiture without first giving notice to the vendee and allowing him a reasonable time to perform on his part.'' (2 Warvelle on Vendors, sec. 820.) Where the indulgence has been extended until long after all the installments are due, nonpayment alone will not justify a forfeiture. (*Boone* v. *Templeman, supra; McCroskey* v. *Ladd*, 96 Cal. 455, 31 Pac. 558.) But, though the vendor has extended indulgence to the vendee, he is not required to wait [7] indefinitely for the vendee to perform his obligation. If the latter continues in default, the vendor, by demand for payment of the balance of the purchase money and notice of his purpose to terminate the contract in case of further default, may put the vendee upon his guard. If after such notice he does not make payment within a reasonable time, the vendor may declare the contract at an end. This doctrine was recognized by this court in *Fratt* v. *Daniels-Jones Co., supra,* and is announced by these cases: *King* v. *Wilson,* 6 Beav. 126; *Eaton* v. *Schneider,* 185 Ill. 508, 57 N. E. 421; *Boone* v. *Templeman, supra; Maffet* v. *Oregon & C. R. Co.,* 46 Or. 443, 80 Pac. 489; *Kirby* v. *Harrison,* 2 Ohio St. 326, 59 Am. Dec. 677; *Mo* v. *Bettner,* 68 Minn. 179, 70 N. W. 1076; *Gaughen* v. *Kerr,* 99

Iowa, 214, 68 N. W. 694; *Pier* v. *Lee*, 14 S. D. 600, 86 N. W. 642; *Walker* v. *McMurchie*, 61 Wash. 489, 112 Pac. 500.

5. So far as they are questioned by the contentions of counsel, we think the findings of the trial court are amply justified by the evidence and fully support the decree.   It is true that it [8] is not alleged that the demand upon the defendant was accompanied by a tender of a deed.   A deed was tendered on the trial, however.   In view of the failure of defendant to respond to the demand of the plaintiff, as well as his failure to tender payment at the trial and demand a conveyance, the conclusion seems inevitable that he is either unwilling, or, more probably, unable, to meet his obligations under the contract. Such being the case, he is in no position to claim that the plaintiff ought to be denied relief.

The judgment and order are affirmed.

*Affirmed.*

MR. JUSTICE HOLLOWAY and MR. JUSTICE SANNER concur.